IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| EVOLUTION CAPITAL MANAGEMENT LLC, a limited liability company; EVOLUTION FUND LTD. SPC, a segregated portfolio company; EVOLUTION MASTER FUND LTD. SPC, a segregated portfolio company, | ) ) ) ) ) ) ) ) | CIVIL NO. 06-00494 SOM-KSC  ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COUNTERCLAIMS |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| RICHARD A. MAYUS, an individual; F. ALEXANDER MAYUS, an individual; CORMORANT CAPITAL MANAGEMENT LLC, a limited liability company; CORMORANT CAPITAL FUND LTD. SPC, a segregated portfolio company; CORMORANT CAPITAL MASTER FUND LTD. SPC, a segregated portfolio company; and EVOLUTION CONSULTING LLC, a limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants and Counterclaim Plaintiffs, | ) ) ) | |
| and | ) ) | |
| F. ALEXANDER MAYUS; RICHARD A. MAYUS, | ) ) ) | |
| Counterclaim Plaintiffs | ) ) ) | |
| vs. | ) ) | |
| EVOLUTION CAPITAL MANAGEMENT LLC, | ) ) ) | |
| Counterclaim Defendant, | ) ) ) | |

```
             and              )
                              )
MICHAEL LERCH,                )
                              )
           Additional         )
           Counterclaim       )
           Defendant.         )
_____ )
```

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS COUNTERCLAIMS

I.       INTRODUCTION.

This action arises out of alleged misuse of a

securities trading strategy that Evolution Capital Management LLC

("ECM") says it developed.  ECM and related entities sued Richard

and Alexander Mayus and others for improperly using and

disclosing that trading strategy.

The Mayuses filed separate counterclaims, each with

four counts.  Part of the first count (First Counterclaim)

asserts that this was a "sham" lawsuit filed by ECM.  The First

Counterclaim also alleges various other forms of unfair

competition.  The Mayuses also assert causes of action for

breaches of fiduciary duties (Second Counterclaim), negligence

(Third Counterclaim), and punitive damages (Fourth Counterclaim).

ECM and Lerch have moved to dismiss the counterclaims.

The motion is granted in part and denied in part.  To the extent

ECM and Lerch argue that they have Noerr-Pennington immunity, the

motion is denied.  However, with respect to the unfair

competition claims arising out of ECM's claimed breaches of oral

confidentiality agreements, the First Counterclaims are dismissed because they do not meet the heightened pleading standard for "sham" complaints.  The court denies the motion to the extent it argues that, under Rule 9(b) of the Federal Rules of Civil Procedure, the counterclaims are not pled with sufficient specificity.  The court grants the motion to the extent it seeks dismissal of the Second and Third Counterclaims, as the Mayuses lack standing to assert those claims.  Finally, the court denies the motion to the extent it seeks dismissal of the punitive damage counterclaim.  The Mayuses may file amended counterclaims within the limits set forth in this order.

II.      BACKGROUND FACTS.

ECM contracted with Evolution Consulting LLC ("Consulting") to have Consulting provide ECM with certain services.  See Consulting Agreement (attached as Exhibit 2 to the Amended Complaint).  The consulting agreement appears to have been executed by Michael Lerch in his capacity as the sole member of ECM and by Defendant Richard Mayus in his capacity as the sole member of Consulting.  Id.  Notwithstanding the agreement itself, which expressly states that it is between ECM and Consulting, Plaintiffs allege that the agreement was entered into by ECM, Consulting, and Richard Mayus.  See Amended Complaint ¶¶ 22-23.

On or about September 2, 2002, Consulting entered into a confidentiality agreement with ECM.  Consulting agreed to keep

ECM's confidential information confidential.  See Confidentiality

Agreement (Sept. 2, 2002) (attached as Exhibit 1 to Amended

Complaint).  The agreement defined "confidential information" as

"all oral, written, electronic, machine-recordable or other form

of information and materials relating to the business of [ECM] or

its customers which is disclosed to [Consulting] by [ECM] and

that is not in the public domain . . . ."  Although the agreement

was executed by Michael Lerch in his capacity as the sole member

of ECM and by Richard Mayus in his capacity as the sole member of

Consulting, see id., Plaintiffs allege that ECM entered into

confidentiality agreements with both Consulting and Richard

Mayus.  See Amended Complaint ¶¶  18-21.

        Plaintiffs later allege that, "[c]onsistent with the

terms of the Confidentiality Agreement, R. Mayus was told and

understood that the information he received, including the

trading Strategy, was proprietary and confidential and he agreed

that he would keep this information in the strictest confidence

and would not disclose or use this information except for [ECM's]

benefit."  Amended Complaint ¶ 29.  It therefore appears that ECM

believes that it has an oral confidentiality agreement with

Richard Mayus.

        Plaintiffs additionally allege that Defendant Alexander

Mayus was a director of Evolution Fund Ltd. SPC and Evolution

Master Fund Ltd. SPC (collectively, "Evolution Funds").

Plaintiffs allege that, as a director, Alexander Mayus was privy to ECM's confidential trading strategy.  Amended Complaint ¶¶ 32-33.  According to Plaintiffs, Alexander Mayus "was told and understood that the information he received, including the Trading Strategy, was proprietary and confidential and he agreed that he would keep this information in the strictest confidence and would not disclose or use this information except for [ECM's] benefit."  Amended Complaint ¶ 34.  It therefore appears that ECM believes that it has an oral confidentiality agreement with Alexander Mayus.

Plaintiffs allege that Alexander Mayus resigned as a director of the Evolution Funds in April 2004.  Amended Complaint ¶ 37.

Plaintiffs further allege that Richard Mayus terminated his individual contractual relationship with ECM on June 23, 2004.  Amended Complaint ¶ 38.  The Notice of Termination, however, appears to have been signed by Richard Mayus on behalf of Consulting in his capacity as the sole member of Consulting.  See Notice of Termination (attached as Exhibit 3 to the Amended Complaint).

According to Plaintiffs, the Mayuses formed a company called Cormorant Capital Management LLC ("Cormorant").  Amended Complaint ¶ 39.  Plaintiffs allege that the Mayuses and Cormorant

are using and disclosing to others ECM's confidential trading strategy. Id. ¶¶ 41-44.

Plaintiffs' Amended Complaint contains eight counts. In Count One, Plaintiffs allege that Richard Mayus, Alexander Mayus, and Consulting, whose sole member is Richard Mayus, breached confidentiality agreements regarding the trading strategy. Count Two alleges that the Mayuses breached fiduciary duties owed to ECM and the Evolution Funds through their use and disclosure of the alleged confidential trading strategy. Count Three alleges that all Defendants tortiously interfered with Plaintiffs' prospective business advantage. Count Four alleges that all Defendants used and disclosed the confidential trading strategy in a manner constituting unfair competition in violation of section 480-13(a) of the Hawaii Revised Statutes. Count Five alleges that all Defendants converted the confidential trading strategy for their own use. Count Six alleges that all Defendants were unjustly enriched. Count Seven alleges that Consulting, Cormorant, Cormorant Capital Fund Ltd. SPC, and Cormorant Capital Master Fund Ltd. SPC are the alter egos of the Mayuses. Count Eight alleges that all Defendants participated in a civil conspiracy.

On September 21, 2006, the Mayuses filed separate but nearly identical counterclaims, each with four counts against ECM and its sole member, Michael Lerch, who is not a party to the

Amended Complaint.  The first count, designated the "First Counterclaim," alleges unfair competition.  This count is based on the specific allegation that Plaintiffs' complaint against the Mayuses is a sham because neither of the Mayuses was a party to the confidentiality agreement entered into between ECM and Consulting and because the information at issue was not confidential.  The Mayuses argue that Plaintiffs' complaint is therefore grounded on false allegations and is motivated by a desire to misuse the litigation process as an anticompetitive weapon.  See Richard Mayus's Counterclaim ¶¶ 18-19; Alexander Mayus's Counterclaim ¶¶ 19-20.  The Mayuses additionally argue that Plaintiffs' complaint is a sham because they are not using or disclosing confidential information, as that term is defined in the confidentiality agreement.  See Richard Mayus's Counterclaim ¶ 20; Alexander Mayus's Counterclaim ¶ 21.

The First Counterclaim also asserts that ECM and Lerch engaged in unfair competition through alleged conduct unrelated to the filing of Plaintiffs' complaint.  The Mayuses allege that ECM and Lerch are using illegal and/or impermissible trading practices that constitute unfair and anticompetitive practices to deprive them of business.  See Richard Mayus's Counterclaim ¶¶ 23-25; Alexander Mayus's Counterclaim ¶¶ 22-24.

The Second Counterclaim alleges that Lerch owed a fiduciary duty to the Evolution Funds that he managed.  Both

Mayuses allege that they were investors in a Delaware limited partnership that invested in one of the Evolution Funds.  Both Mayuses allege that Lerch breached a duty owed to the funds' investors by intending to "grow" the funds Lerch managed without any developed trading strategy and by collecting a 3 percent management fee regardless of the performance of the funds.  The Mayuses allege on information and belief that Lerch charged the funds' investors for costs incurred in his personal projects and was otherwise willfully mismanaging the funds for personal gain and not in the best interest of the funds' investors.  See Richard Mayus's Counterclaim ¶¶ 28-30; Alexander Mayus's Counterclaim ¶¶ 29-31.  In a paragraph incorporated by reference into all counts, the Mayuses allege that Lerch's intention to "grow" the funds without a developed trading strategy and to collect a 3 percent management fee regardless of performance was "improper, if not fraudulent."  See Richard Mayus's Counterclaim ¶ 13; Alexander Mayus's Counterclaim ¶ 14.

The Third Counterclaim alleges negligence.  Although both Mayuses fail to allege that they have ever been direct investors in the Evolution Funds, they allege that ECM and Lerch breached a duty of care owed to all investors in the Evolution Funds.  The alleged breach related to the management of the Evolution Funds by ECM and Lerch.  See Richard Mayus's Counterclaim ¶¶ 33-34; Alexander Mayus's Counterclaim ¶¶ 34-35.

The Fourth Counterclaim seeks punitive damages against ECM and Lerch.

III.      LEGAL STANDARD.

This court has set forth the Rule 12(b)(6) standard of review in its December 12, 2006, order denying Defendants' motion to dismiss.  That standard of review, incorporated herein by reference, applies to motions seeking dismissal of counterclaims. see Circle Group Holdings, Inc. v. Akhamzadeh, 2006 WL 2548164, *7 (N.D. Ill. Sept. 1, 2006) ("A court considers a counterclaim under the familiar Rule 12(b)(6) standard just as if it were brought as a claim in a plaintiff's complaint.").

IV.      ANALYSIS.

A.   The Noerr-Pennington Doctrine.

ECM and Lerch seek dismissal of both counterclaims based on the Noerr-Pennington Doctrine.  That request is denied.

The Noerr-Pennington Doctrine arises out of the First Amendment's Petition Clause.  Its purpose is to provide citizens with immunity from some forms of liability for the their efforts to persuade government officials to act in a certain way.  See Kottle v. N.W. Kidney Ctrs., 146 F.3d 1056, 1069 (9th Cir. 1998). The Supreme Court has applied the Noerr-Pennington Doctrine to provide immunity for attempts to persuade all three branches of the United States government.  Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508 (1972) (judicial); United Mine Workers v.

<u>Pennington</u>, 381 U.S. 657 (1965) (executive); <u>E.R.R. Presidents</u> <u>Conf. v. Noerr Motor Freight, Inc.</u>, 365 U.S. 127 (1961) (legislative).  Although the <u>Noerr-Pennington</u> Doctrine originally arose in the anti-trust context, "it is based on and implements the First Amendment right to petition and therefore, with one exception . . . , applies equally in all contexts."  <u>White v.</u> <u>Lee</u>, 227 F.3d 1214, 1231 (9th Cir. 2000).

For purposes of <u>Noerr-Pennington</u> immunity, "petitions" brought in the judiciary include complaints, answers, counterclaims, and other documents and pleadings in which plaintiffs and/or defendants make representations and present arguments.  <u>Freeman v. Lasky, Haas & Cohler</u>, 410 F.3d 1180, 1184 (9th Cir. 2005).  When one of these "petitions" is filed with the court, the <u>Noerr-Pennington</u> Doctrine provides the filing party with immunity for making allegations.  This immunity is grounded in the First Amendment and exists unless the "petitioning activity is unprotected by the First Amendment."  <u>White</u>, 227 F.3d at 1231.  "Petitions" brought in courts are unprotected by the <u>Noerr-Pennington</u> Doctrine only if they are shams.  <u>Id.</u>

The Ninth Circuit has recognized three circumstances in which litigation might be a sham:

> First, if the alleged anticompetitive
> behavior consists of bringing a single sham
> lawsuit (or a small number of such suits),
> the antitrust plaintiff must demonstrate that
> the lawsuit was (1) objectively baseless, and

> (2) a concealed attempt to interfere with the plaintiff's business relationships.
>
> Second, if the alleged anticompetitive behavior is the filing of a series of lawsuits, the question is not whether any one of them has merit--some may turn out to, just as a matter of chance--but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.
>
> Finally, in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

Freeman, 410 F.3d at 1184 (quotations omitted).

ECM and Lerch have moved to dismiss both counterclaims based on the Noerr-Pennington Doctrine, which is not limited to protecting the party who filed the pleading that commenced the action.  See Freeman, 410 F.3d at 1186 ("The First Amendment petition right belongs to the defendants in the original case, though their employees, law firms and lawyers, as their agents in that litigation, get to benefit as well.").  Lerch is the sole member of ECM.  He controls ECM and is as deserving of Noerr-Pennington immunity as the employees and agents of the company in Freeman.  As discussed above, one of the purposes of the Noerr-Pennington Doctrine is to provide some First Amendment protection to people who file pleadings with the court.  Defendants'

11

argument that Noerr-Pennington immunity only extends to employees, agents, and others who do not personally participate in the filing of a pleading makes little sense in light of the doctrine's purpose.

Noerr-Pennington immunity, however, does not extend to all of the claims asserted in the counterclaims.  Instead, Noerr-Pennington immunity extends only to claims of liability based on "petitions" filed with this court.  Only the part of the First Counterclaim for unfair competition is based on ECM's filing of a complaint.

The Mayuses argue that the Noerr-Pennington Doctrine is inapplicable because ECM's complaint is a sham, undeserving of any First Amendment protection.  Whether a "petition" filed with the court is a sham is determined by applying a two-part test. First, the court examines whether the petition was objectively baseless, meaning that the filing party lacked probable cause to institute the legal proceedings.  Second, the court examines whether the petition was subjectively a concealed attempt to interfere with the other party's business relations.  See Freeman, 410 F.3d at 1185.

The Mayuses allege that only Consulting was a party to the confidentiality agreement.  The Mayuses argue that the filing of a claim based on an alleged breach by them of the confidentiality agreement is a sham.  Of the three circumstances

that the Ninth Circuit has recognized might indicate sham litigation, the first and the third might apply--ECM's complaint against the Mayuses was either objectively baseless and a concealed attempt to interfere with the Mayuses business relationships, or it contained intentional misrepresentations to the court that deprived the litigation of its legitimacy.  See Freeman, 410 F.3d at 1184; Kottle, 146 F.3d at 1060.

ECM and Lerch argue that, because the Mayuses are seeking damages for conduct protected by the First Amendment, the mere pendency of the action is chilling their exercise of First Amendment rights.  ECM and Lerch assert that this court must apply a heightened pleading standard to the Mayuses' counterclaims.  See Kottle, 146 F.3d at 1063.  Part of Richard Mayus's counterclaim satisfies this heightened standing.

The confidentiality agreement attached to the Amended Complaint appears to be an agreement between only ECM and Consulting.  ECM alleges that Richard Mayus, but not Alexander Mayus, breached this written agreement.  See Amended Complaint ¶¶ 47, 49.  As a nonparty to the agreement, Richard Mayus pleads sufficient facts showing that ECM was objectively unreasonable in filing its breach of written contract claim against him.  This unreasonableness, in turn, suggests that the Amended Complaint may have been subjectively motivated by ECM's desire to interfere with Richard Mayus's business relations.  Richard Mayus therefore

13

alleges a valid claim that ECM's complaint against him was a sham.

ECM and Lerch disagree with the Mayuses about the application of the "sham exception" here, arguing that the breach of contract claim was, at worst, inartfully pled.  Their intent, ECM and Lerch explain, is to hold Richard Mayus liable for Consulting's conduct under an alter-ego theory.  For that reason, they say, it was objectively reasonable to assert a breach of contract claim against Richard Mayus.  The legitimacy of this disagreement is called into question by the allegation that the actual agreement between Consulting and ECM required Richard Mayus to maintain the confidentiality of the information.  See Amended Complaint ¶ 47.  However, the court need not decide on this motion whether the Amended Complaint was objectively unreasonable in asserting a breach of the written confidentiality agreement claim against Richard Mayus.  See Morrone Co. v. Barbour, 241 F. Supp. 2d 683, 690 (S.D. Miss. 2002) ("any consideration of whether the 'sham exception' to the Noerr-Pennington doctrine is applicable in the present case would require an analysis of both the merits of the original action brought by Morrone Company and of its subjective motivation in bringing that action.  These issues can only be properly analyzed through a consideration of evidence outside of the pleadings and exhibits attached to said pleadings, and, as such, are not

14

appropriately considered in the present Rule 12(b)(6) context."). Accordingly, to the extent Richard Mayus's counterclaim for unfair competition is based on ECM's alleged sham complaint seeking to hold Richard Mayus personally liable for breaching the written confidentiality agreement, ECM's motion to dismiss Richard Mayus's counterclaim is denied.

        The First Counterclaim for unfair competition is also based on the Mayuses' allegation that ECM's complaint was a sham to the extent that complaint alleged breaches of oral understandings and/or agreements to keep certain information confidential.  The Mayuses say that Lerch knew that his trading strategy was in the public domain and was therefore not subject to any confidentiality agreement.  This part of the First Counterclaim for unfair competition is dismissed because it fails to meet the heightened pleading requirements.  See Kottle, 146 F.3d at 1063.  The only detail supporting this part of the counterclaim is that Lerch had stated that "others were using certain order placement methodologies in trading securities."  At best, the First Counterclaim alleges only that some trading strategy was being used, not that Lerch knew that others were actually using the same trading strategy as ECM, which would have indicated that Lerch knew the trading strategy was not confidential.  Although the court dismisses this part of the First Counterclaim, the Mayuses are given leave to amend it to

make allegations, if they can, that satisfy the heightened
pleading standard.

        B.    <u>Rule 9(b) is Inapplicable.</u>

ECM and Lerch argue that the Mayuses' Counterclaims
should be dismissed because they fail to meet the heightened
pleading requirement found in Rule 9(b) of the Federal Rules of
Civil Procedure.  ECM and Lerch argue that each of the
counterclaims incorporates by reference an earlier allegation in
which the Mayuses characterize Lerch's intent to "grow" the funds
he was managing without a plan and to keep a 3 percent management
fee regardless of the fund's performance as "improper, if not
fraudulent."

The court is unconvinced that calling something
"improper, if not fraudulent" is sufficient to turn claims for
unfair competition, breach of fiduciary duties, negligence, and
punitive damages into claims of fraud for purposes of Rule 9(b).
The statement that something was "improper, if not fraudulent" is
akin to calling Lerch's actions "improper, and possibly even
fraudulent."  Had the Mayuses alleged the latter, it could not be
said that all of the Mayuses' claims sound in fraud, as the
allegation itself recognizes that Lerch's conduct might not have
been fraudulent.

Plaintiffs belatedly argue that allegations of market
manipulation, <u>see</u>, <u>e.g.</u>, Alexander Mayus's Counterclaim ¶ 23, are

allegations of fraud to which Rule 9(b)'s heightened pleading standard applies.  Because this argument was raised for the first time in Plaintiffs' Reply, Local Rule 7.4 requires this court to disregard it.  See Local Rule 7.4 ("Any arguments raised for the first time in the reply shall be disregarded.").  In disregarding this argument, the court is not prohibiting a subsequent motion on the subject.  Of course, should the Mayuses decide to amend their counterclaims, they should consider whether they should allege additional information in light of this argument.

      C.   Breach of Fiduciary Duty and Negligence Claims.

The Mayuses' counterclaims assert that Lerch breached his fiduciary duties to people investing in the Evolution Funds. The counterclaims also assert that Lerch and ECM were negligent in managing those funds.  Because neither Richard nor Alexander Mayus was a direct investor in the Evolution Funds, both lack standing to assert breach of fiduciary duty and negligence claims.  See San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996) (requiring a personal injury-in-fact).

Both Mayuses allege that they invested their money with Evolution Fund LP, a Delaware limited partnership.  They say that this limited partnership invested in Evolution Master Fund, which Lerch managed.  The limited partnership's investment in that fund is insufficient to establish the Mayuses' standing here, as the claims of breach of fiduciary duty and negligence belong to the

17

limited partnership, the entity that actually invested in the fund, not to investors in the limited partnership. Phillips v. Kula 200 II, 4 Haw. App. 350, 357, 667 P.2d 261, 265 (Ct. App. 1983) ("we hold that a limited partner may not bring a suit for himself and in his own right on a cause of action belonging to the limited partnership").

The Mayuses argue that, under Delaware law, a general partner may be sued directly by the limited partners of the limited partnership of which it is a general partner. See Opposition at 25-26. The Mayuses therefore contend that, as investors in Evolution Fund LP, a Delaware limited partnership, they should be allowed to sue regarding actions taken in connection with Evolution Master Fund, the company that Evolution Fund LP invested in. There are two flaws with this argument. First, the Mayuses only allege that they were investors in the Evolution Fund LP, not that they were limited partners of it. See, e.g., Alexander Mayus's Counterclaim ¶ 5. Second, there is no allegation that Evolution Master Fund is the general partner of Evolution Fund LP. The court has only the parties' agreement that Evolution Master Fund is a Cayman Island segregated portfolio company.

The second and third counterclaims are therefore dismissed.[1]  If the Mayuses can, in good faith, allege that Evolution Master Fund is the general partner of Evolution Fund LP and that they are limited partners of Evolution Fund LP, they may reallege these counterclaims in amended pleadings.  Otherwise, in any amended pleading, they may allege counterclaims in the form of derivative actions, assuming that they have a good faith basis for such counterclaims under the applicable law and facts.

D.    Punitive Damages.

In Hawaii, punitive damages may be awarded

> where the defendant has acted wantonly or
> oppressively or with such malice as implies a
> spirit of mischief or criminal indifference
> to civil obligations; or where there has been
> some wilful misconduct or that entire want of
> care which would raise the presumption of a
> conscious indifference to consequences.

Masaki v. General Motors Corp., 71 Haw. 1, 11, 780 P.2d 566, 572, recon. denied, 71 Haw. 664, 833 P.2d 899 (1989).  ECM and Lerch argue that the punitive damage counterclaim should be dismissed because it fails to assert any conduct that could possibly support a claim for punitive damages.  The court disagrees, as the Mayuses have alleged that ECM filed a sham lawsuit for an anticompetitive purpose.  The counterclaims also assert that Lerch and ECM have been using illegal and/or impermissible

---

[1]Because these counterclaims are dismissed based on a lack of standing, the court does not analyze the other arguments made in favor of dismissing the second and third counterclaims.

19

trading practices that constitute unfair and anticompetitive

practices.  These allegations sufficiently support the Mayuses'

counterclaims for punitive damages.

V.      CONCLUSION.

        For the foregoing reasons, the motion to dismiss the

counterclaims is granted in part and denied it part.  Some of the

counts are dismissed, leaving the following: 1) Richard Mayus's

First Counterclaim for unfair competition arising out of the

alleged breach of the written confidentiality agreement between

ECM and consulting; 2) the First Counterclaim arising out of

conduct that was improper under the rules of the stock exchange;

and 3) the Fourth Counterclaim for punitive damages.  Within the

limitations set forth in this order, amended counterclaims may be

filed no later than December 29, 2006.

        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, December 12, 2006.



_____
Susan Oki Mollway
United States District Judge

Evolution Capital Management LCC, et al. v. Richard A. Mayus, et al., Civ. No.
06-00494 SOM-KSC; ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
COUNTERCLAIMS